The next matter on for argument is Robert Kincheloe v. American Airlines, case number 22-15726. Okay, I think everyone might be situated. I'm assuming for the appellee, is only one person arguing? Yes, Your Honor. Okay. All right, thank you. Counsel, you may proceed. Good afternoon, Your Honor. I'm Mark Potashnik of White House. I'm Potashnik here for the appellants. Mr. Kincheloe, Adol, I would like to reserve three minutes for rebuttal. I'm sorry, your name again? Mark Potashnik. Oh, okay, thank you. We believe the only issue decided by the district court was whether the plaintiff sufficiently stated a claim for constructive discharge, and thus this appeal should come down to just a few key questions. The first one is, does coercion inherent in the choice to leave employment support constructive discharge? The district court said that the only thing that does support constructive discharge. Wait, I'm a little confused on the calendar here. Can you stop the clock? Okay, Mr. Potashnik, you represent? The plaintiffs. Okay, I guess I had the old calendar. Okay, so it said you were representing American Airlines. No. Okay, all right, I'm sorry. I just want to make sure that appellant's starting. All right. You switched it out? Yeah, that's the ‑‑ but anyway, so let's just go back and start over. So you're Mr. Potashnik, and you are representing the plaintiff appellants, correct? Correct, I am. All right, so whether it's an old or a new calendar, okay, we got it right. Okay, the only issue decided at the district court level was whether the plaintiffs had sufficiently stated a claim for constructive discharge. So this appeal should come down to just a few issues. One is, does coercion inherent in the choice to leave employment support a constructive discharge? The Ninth Circuit answered that question affirmatively in cases like Knappenberger and Kelvinskis, and several district courts in the Ninth Circuit have also done so. In contrast to all those cases, the district court said that the only way to show constructive discharge was that the workplace was adversely impacted by ongoing discrimination. So did you abandon your argument, the comparison of the March 2020 VEOP and the July 2020 VEOP? We have not abandoned that argument. Oh, okay. All right, Judge Schroeder, I'm sorry. Well, could you back up a minute? Yes. Your clients were offered early retirement? Yes. And their alternative to early retirement was to continue working? Correct. And there's two comparisons. And your argument is that they weren't really able to continue to work, they were actually constructively discharged, which would make the early retirement, take it outside of the safe harbor provision? Is that what your argument is? Yes, Your Honor. Okay. So how did the airline constructively discharge your client by saying that they could go back to work? In a couple ways. If you look at the law, one way to show constructive discharge is to show that there is coercion inherent in the choice. And it doesn't even say that the employer has to be responsible for the coercion inherent in the choice. And the second way, the employer, American Airlines, took a few actions to create or emphasize that coercion, such as there would be no leaves of absence until enough flight attendants took the VEOP. There would be not enough limited flight schedules until, keyword until, enough. Well, okay, but didn't American Airlines face mask and leave of absence policies apply to all flight attendants regardless of age? So how did those cause age discrimination? You said face mask and what policies? And leave of absence policies. Didn't they apply to all flight attendants? No, because the law is clear that seeking to avoid health problems related to a particular risk factor is not seeking preferential treatment. It is seeking to avoid adverse treatment. I can cite numerous cases on that, such as Touche versus Halliburton, where there's field supervisors, and all the field supervisors do about the same amount of driving. But we have this one supervisor who has to do the same amount of driving, but he has a heart issue. And with a heart issue, he has coercion inherent in the choice. It's the same with the Dotoro cases where, you know, basically everybody had. Well, the coercion here is what? The coercion here is the fact that the older employees had to work with a Whereas the younger employees did not. Because of the nature of COVID. Because of the nature of COVID, correct. Well, okay, the 2020 VEOP, didn't that offer the plaintiff greater benefits than they would have received if they had otherwise chose to retire? If they had chose to retire without the VEOP, yes. It would have. But to determine whether the VEOP or early retirement plan is lawful, you have to look at the characteristics here. Is there something pushing the employee to leave because of coercion inherent in the choice? So tell me what aspects of the 2020 VEOP take it outside the ADEA safe harbor provision that's in 29 U.S.C. section 623 F2B ii. So what takes it outside that safe harbor? Well, it can't be a constructive discharge. There's many cases that we've cited that show that you can have constructive discharge when an employee is subject to a particular health risk that's related to a risk factor. So you can only win if you can show a constructive discharge? No. One thing we've argued at the district court is the seminal case in all this is the Seventh Circuit's case in Henn. Henn came up with various ways to show a constructive or an unlawful early retirement plan. One of them was constructive discharge. Another was, and this goes back to the language of the ADEA, which says it has to be voluntary. Henn says it's not voluntary if there is pressure. It's not voluntary if there is coercion. It's not voluntary if the employees aren't given all of the relevant information about what would happen if they signed. In this case, none of the employees who were offered the first VEOP were told that they would have to sign a broad waiver of their rights until there was an agreement by the parties, and American Airlines later thought of it. Well, let's go back to the coercion or the constructive discharge for a minute. Yes. Doesn't that mean it has to be action by the employer? Isn't it a discharge by the employer or coercion by the employer? Yes and no. Here's the no part. Okay. If you look at, like, Kelvinskis by the Ninth Circuit that's cited in our briefing, the coercion circled around the fact that the employee might have financial pressures that would convince him to make a particular decision. In cases like Parento, it's a Title VII case, and these all concern the totality of the circumstances. That's what the Ninth Circuit says. When you look at whether there's a constructive discharge, you have to look at the totality of the circumstances. Well, the circumstances here are that there was an epidemic, a pandemic of a disease that meant that nobody was flying, so they didn't have any business, the airlines. Yet they insisted that everybody work without breaks, without reduced work schedules, until enough people took the VIA. That's not we're not blaming American for the... Across the board. Yes. We're not blaming American for the VIA. What we're saying is American took advantage of the VIA to put older workers in a position that risked their health. The same risk wouldn't be applicable to a younger flight attendant. Now, on top of that, I mean, we have the audiovisual recording of the CEO at that time of American Airlines who admits what we're really trying to do is motivate those who are close to retirement age to retire. Well, that's a statement of particular intent as to older workers. Well, how could they offer the VEOP to people that only worked one year? They would be younger. There was a... They tied the... I mean, that just wouldn't make any sense. So then young people get the same retirement that people that have put time in would get? No, here's what they did. They said that one thing that you have to do to qualify for the VEOP is to work 10 years. But if you look at whether somebody could work 10 years and look at the history of their hiring freezes, the only people of all their flight attendants who could possibly qualify for it were over 40 years old. And the only ones who were really enticed were about 60. Well, do you have to show discrimination with a hiring freeze? No. I mean, because... It's not the hiring freeze that we're saying is discriminatory here. It's the way that the VEOP was designed. Well, but the whole point of the safe harbor is to permit an employer to make it advantageous for employees to take an early retirement. Okay, well, it still has to be voluntary within the meaning of the statute. That's in the ADEA, okay, which means no constructive discharge, no pressure, no coercion, full information on the facts. Yeah, but the pressure and the... You don't really disagree with this, that the pressure and the coercion was as a result of the COVID epidemic. I do disagree to push back with the court. Okay. All right, here's why. You know, I'm in the position of an attorney. I'm not in the position of somebody who figures out how businesses should operate, but... I mean, they could have taken volunteers to work. They not made everybody work or at least threatened everybody with working. You know, they really probably only needed about 5% of their workforce because only about 5% of the American people were still flying. You know, they shouldn't have said, everybody has to work without a leave of absence or everybody has to work without a reduced work schedule. Those were the aspects of this circumstance. And is your point the fact that they didn't do those things made their actions discriminatory? No, the point is that with a VOP, you can't have a constructive discharge and there's two ways to show it's constructive discharge. One is to show the workplace is permeated with a discriminatory action. That's not the way we've gone. The other one is to say there is coercion inherent in the choice. What choice did these flight attendants really have? Do you want to save any time for rebuttal? But Judge Schroeder may have a question. No, I don't have a question. Do you want to save any time for rebuttal? Yes, I do. Okay, because you're down to 2 minutes and 40 seconds. Okay. Thank you. All right, we'll hear from the Capelli American Airlines. Good morning. Good morning. May it please the Court. Jason Zerro on behalf of American Airlines. American cannot be held responsible under the ADEA for the consequences of the COVID-19 pandemic. This is not in any way to diminish COVID's effect on older workers, but it means that American, like every other employer at the beginning of the pandemic, can only be responsible for its policies. Plaintiffs have identified three, I think. American's leave of absence policies, American's mask policies, and something to do with releases. It does not matter. This is, I think, very important. It does not matter whether those policies are evaluated under the rubric of intolerable working conditions or coercion. They fail to state a claim regardless for the reasons that the district court stated. And I can jump straight into those policies and then circle back, if the Court has any questions, on the distinction between. Well, I guess I'll play the devil's advocate. Why isn't the question of whether the March 2020 VEOP discriminated against older flight attendants a factual issue that should have gone to the jury? It's not a factual issue that should go to the jury because no objectively reasonable person would have felt coerced to quit in the circumstances here. And this Court has decided multiple cases as a matter of law that there wasn't a constructive discharge. I would cite the Court to the Poland case, the Brooks case, and Knappenberger. The case on which plaintiffs most heavily rely was a case at the pleading stage just like this one. Okay, so then let's, I guess, responding to what your friend on the appellant side said, there were a lot of other ways you could have handled this. So even accepting that the changes to the working conditions of flight attendants were primarily brought on because of the COVID pandemic, could plaintiffs not show that America's response to the pandemic discriminated against older flight attendants? Why do you contend that the plaintiffs have failed to make that showing? Yes, Your Honor. So the first thing is I think what they are requesting is that America extend a discretionary benefit. What they're saying, and I would direct the Court to paragraph 16 of their complaint, this refers specifically to leaves of absence, is that American should have at that time elected in its discretion to grant reduced work hours schedules or leaves of absence entirely, excuse employees from working their jobs at all or let them work part-time. The ADEA, as a matter of law, does not require that kind of preferential treatment. It doesn't require an accommodation, which is essentially what plaintiffs are seeking. The District Court was entirely correct when it said that. The second and independent reason is the test for constructive discharge in the circuit is really high. It's a high bar. What this Court has said in Knappenberger, for instance, is that the employee needs to be denied of their free will. They can't have a choice. They must be compelled to retire. And being asked to work your full-time job at the beginning of the pandemic, with all respect, is not denying someone free will. It's just asking someone to do what they were hired to do. Either of those bases is an independent reason to affirm the District Court's judgment, and both of those bases were in the District Court's judgment. Well, could there be circumstances? I know you're not contending that they're present, but could there be circumstances that an employer could require, say, well, I think doing your job would be, you know, and subjecting people to undue danger or things along those lines? Yes, Your Honor. We don't dispute that, in theory, there could be a case where the employer sent the employee into such dangerous circumstances that the employee would feel compelled to quit. Like, you know, someone owns a mine and there are dangerous chemicals in the mine and the employer says you have to go in regardless with no business reason. Theoretically, that could give rise to a constructive discharge, but the very important point there is what the Court would be looking at is at the employer's policies. As a theoretical or academic matter, I don't disagree. I just think this is not one of those cases. They do argue that if they went to work, they weren't supposed to wear masks and that this was a condition that shouldn't have been imposed. Do you want to respond to that? Yes, Your Honor. So American, at the relevant time, permitted the employees to wear masks, permitted but did not require. That was entirely consistent with government guidance at the time. In fact, at the relevant time, the government was discouraging people. If Your Honors may remember, the government was saying, there's a critical shortage of masks, we need to save these for healthcare workers, we need to save the masks. It would have been a very bad thing, for example, if American had stockpiled masks for its flight attendants because the government was saying, we need these for healthcare workers. American's policies were entirely consistent with what the government was doing and I want to return to the Knappenberger free choice, free will, no choice test. The employees here had a choice to wear masks. That, I think, means that they did not have a choice. Sorry, that was a little bit confusing. But I think that contrasts, as we said, in our 28-J opposition letter with the district court cases that plaintiffs have cited. They're district court cases, so take them for what they're worth. But in those cases, the employer prohibited the employees from wearing masks and then said, now you need to go guard somebody  That is very different than saying you can wear a mask. So I don't think, just as a matter of law, this rises to the level of a constructive discharge on the masks piece. And then the last piece I heard is just about the releases and I think the allegation here is plaintiffs believe that they formed a contract where they were going to retire for a VOP without releases and then later in time, American said, hey, sign these releases. Plaintiffs allege that there was no consideration for the releases, so they're outside the scope of the contract. There's a number of reasons that doesn't give rise to a claim. The first is that they don't allege in the complaint that they would not have accepted the VOP with releases. The second is they allege themselves that the releases are invalid. In the argument we just heard, there was an excellent point I thought, that just as a matter of contract law, if it's outside the contract, you know, if there's no consideration, they're going to get their benefit of the bargain. They're saying the bargain was a VOP without releases and they allege... Well, apparently the second VEOP was better. Correct. And it seems that there's an implication that somehow that factors into that. Yes, it does not. What is your assessment of that? So it doesn't factor in and it hurts them. I'll explain why it doesn't factor in first. It doesn't factor in because the eligibility criteria were either the same or more stringent. So if only 40 years and old and up were eligible for the first VOP, then only 40 years and older and up were eligible for the second VOP, and therefore the second VOP can't be discriminatory vis-à-vis the first because it's the same group of people who can participate in both. The reason it hurts them is I think what's underlying the allegation, and this is the theory of damages in the complaint, this is paragraph 3 and paragraph 74, is what they're really saying is, actually, we wish we could have worked that American until July and August. They say they quit in March and April. Work for another 100 days and then accept the second more lucrative offer. But that is antithetical to, it's just directly contrary to the allegation that working conditions were so bad in March and April that they had to quit. What they're saying is, actually, you know, we would have, if we had known about the second offer, worked for another 100 days in these conditions that we're now claiming are so bad that we had no choice but to quit. So I don't think the allegation helps them, but it doesn't matter because they're not discriminatory vis-à-vis each other because it's the same eligibility criteria. Let me see if my colleagues have any questions. We don't have any questions. Thank you, Your Honors. All right. Thank you. Your Honors, I would like to address the question asked to opposing counsel about whether there's a jury question about how bad was it or how coercive was it. You know, on the one end of the spectrum, what if COVID had killed everybody? It would be a no-brainer. Maybe a court could make a decision. On the other end of the spectrum, what if COVID had caused some unpleasant coughing for a few days? It would probably be a no-brainer, too. But what we have here is somewhere in the middle, and we cited the statistics that said that older people were more likely to have serious COVID illness or death. These are published statistics at the date. I think that gets us enough, under the case law, to present the question of whether there was a constructive discharge to the jury. The Ninth Circuit has certainly said on multiple occasions that the decision of a constructive discharge, the determination of a constructive discharge, should not be made on a motion to dismiss, a motion for summary judgment. It should be a jury issue. As to wearing masks, our allegation is that America either prohibited masks or deterred the flight attendants from wearing masks. And as to the next VIA, the real point here is that, as cases like HEN say, you have to provide full information to people before a VIA or it's not voluntarily. Well, they told them, and we have this in writing and we've alleged it, there would be no more VIAs and there would be no increase in benefits in a future VIA. But they turn around and America offers a VIA that's substantially more valuable and attractive to younger employees because it contains health care benefits, whereas the older employees already have Medicare because they're mostly 65. It has free positive space flight tickets where the older employees wouldn't be attracted by that because they'd already qualified for those benefits. But in the case law, what it says is the employer does not have to create the unpleasant work environment. You look to all these circumstances at the time and if all the circumstances show that what you have is a coercive or inherently coercive environment that can support a constructive discharge and that can support an unlawful VIA. I thank all of your honors. Thank you. Thank you both for your arguments. This matter will stand submitted.
judges: SCHROEDER, CALLAHAN, BUMATAY